FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

2012 APR 17 P 12: 23

CLERK'S OFFICE
AT BALTIMORE

|  |  |
|---|---|
| **EE MART FC, LLC,** | * |
| | * |
| **Plaintiff** | * |
| | * |
| v. | * |
| | * |
| **TRAVELERS PROPERTY CASUALTY** | * |
| **COMPANY OF AMERICA,** *et al.*, | * |
| | * |
| **Defendants** | * |

BY_ _ _ _ _ _ _ DEPUTY

**CIVIL No. 1:11-cv-03351-JKB**

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM
### In Re: Defendants' Motion to Dismiss (ECF No. 27)

EE Mart FC, LLC ("Plaintiff") brought this suit against Travelers Property Casualty Company of America, Suzanne de Lyon, Expo Emart, LLC, Expo Emart I, LLC, Expo Emart III, LLC, and SDES, LLC, (collectively "Defendants") for alleged breach of contract, breach of fiduciary duty, fraud, conversion, civil theft, civil conspiracy, and racketeering activity under Racketeering Influenced and Corrupt Organizations ("RICO"), 18 U.S.C. §§ 1961, *et seq.* Now pending before the Court is Defendants' Motion to Dismiss (ECF No. 27). The issues have been briefed and no hearing is required. Local Rule 105.6.[1] For the reasons explained below, Defendants' Motion to Dismiss (ECF No. 27) will be GRANTED IN PART (with respect to Count V of the Amended Complaint, alleging civil RICO violations) and DENIED WITHOUT PREJUDICE IN PART (as to all other issues) and Plaintiff's remaining claims will be REMANDED to the Circuit Court for Carroll County.

---

[1] Plaintiff's request for a hearing is therefore denied.

## I.     BACKGROUND

Plaintiff EE Mart is a Virginia limited liability company that formerly owned and operated an international grocery store in Falls Church, VA.   Plaintiff opened the store in October of 2007 and ran it successfully until it was destroyed by fire in January of 2009.  This case arises out of Plaintiff's allegations that Defendant Suzanne de Lyon, whom it retained to manage its insurance claim after the fire, stole several thousand dollars of insurance proceeds.

According to Plaintiff, Mrs. Hae Deok Kim is the owner and sole member of EE Mart and her husband, Byoung K. Kim, is its president.  Mr. and Mrs. Kim allegedly met Ms. de Lyon when she was a loan officer with PNC Bank.   Plaintiff alleges, however, that in July of 2008, Ms. de Lyon approached Mr. Kim and told him that she had since become the president of a loan and investing company and offered to help EE Mart procure a private business loan.  Mr. Kim accepted the offer.  Allegedly, as part of the loan application process, Mr. Kim gave Ms. de Lyon access to EE Mart's business records, including its insurance policies.   After reviewing the records, Ms. de Lyon informed Mr. and Mrs. Kim that she believed they did not have adequate insurance and suggested that EE Mart purchase a new policy.  Allegedly, she referred them to a personal friend who worked for the firm of Johnson & Strachan, Inc., which is an agency of Defendant Travelers.   EE Mart ultimately purchased a policy, effective January 1, 2009, providing commercial liability coverage of up to $6,305,000.00 and business property coverage of up to $7,500,000.00

Meanwhile, Ms. de Lyon was allegedly continuing to work on procuring a business loan for EE Mart in the amount of $750,000.00.  Mr. Kim, however, was becoming impatient and expressed some skepticism as to Ms. de Lyon's ability to procure the loan.  Ms. de Lyon suggested that she would be able to get the loan much faster if she were able to add her own

2

name to the loan and pledge her own assets as collateral, which she offered to do in exchange for a 30% ownership interest in EE Mart and appointment as its Chief Financial Officer.  Mr. Kim agreed, but allegedly made the appointment and the transfer of ownership contingent on Ms. de Lyon's procurement of the loan.  Before procuring the loan, however, Ms. de Lyon allegedly drew up a modified operating agreement for EE Mart to reflect her ownership and position as CFO.  Mr. Kim signed the agreement, but allegedly told Ms. de Lyon that she would have to procure the loan before the agreement would be effective.  Plaintiff also alleges that Ms. de Lyon drew up a "fictitious" membership certificate to evidence her 30% ownership interest.

A short time later, on January 19, 2009, the EE Mart store was destroyed by a fire.  Mr. Kim asked Ms. de Lyon what he needed to do to file an insurance claim, and Ms. de Lyon told him that she would look into it.  Allegedly, Ms. de Lyon then contacted Travelers and filed a claim on EE Mart's behalf.  A few days later, on January 22, 2009, Mr. Kim, Ms. de Lyon, and Travelers' insurance adjuster, Mr. Ellis, and one of its attorneys, met at the store.  Plaintiff alleges that, because of Mr. Kim's difficulties with English, Ms. de Lyon offered to help him with the insurance claim process in exchange for wages of $9,000 per month and appointment as EE Mart's CFO.  Mr. Kim agreed.

As part of the claim process, Mr. Ellis instructed Mr. Kim to open three bank accounts to receive the proceeds: a payroll account, a business interruption account, and an extra expense account.  Mr. Kim opened the accounts.  In turn, he instructed Mr. Ellis to send him copies of all correspondence concerning the claim.  However, Plaintiff alleges that Mr. Ellis thereafter communicated only with Ms. de Lyon.  Ms. de Lyon was allegedly successful in prosecuting EE Mart's insurance claim, and Travelers ultimately paid a total of $3,249,910.14 over a period of twelve months.  Plaintiff alleges, however, that on three occasions, Ms. de Lyon diverted money

paid on the claim to herself and to several sham business entities that she had created. Specifically, Plaintiff alleges that Ms. de Lyon set up four LLCs, three of which (Expo Emart, Expo Emart I, and Expo Emart III) were named with an obvious variation of Plaintiff's name to make them look like legitimate recipients of checks made payable to Plaintiff. Allegedly, Ms. de Lyon diverted three checks to these companies: one on March 13, 2009 in the amount of $250,000; another on October 7, 2009 in the amount of $222,335.53; and another on December 8, 2009 in the amount of $202,574.61. Plaintiff further alleges that Ms. de Lyon "converted ... to her own use" $106,634.50 worth of equipment that Plaintiff had purchased for remodeling. Finally, Plaintiff claims, based on "information and belief," that Ms. de Lyon used the diverted funds and equipment to operate her own grocery store and/or restaurant in Takoma Park, MD.

Next, Plaintiff alleges that in December of 2009, Ms. de Lyon told Mr. Kim, falsely, that Travelers had not issued any payments on the claim since October and that EE Mart would have to borrow money to meet its payroll obligations. Plaintiff claims that Mr. Kim "challenged de Lyon on the issue" and that she "became defensive," which caused Mr. Kim to become suspicious of her activities with regard to the claim. On January 9, 2009, Mr. Kim sent a letter to Mr. Ellis instructing him to address any future correspondence to him, and not Ms. de Lyon, and requesting a meeting to discuss the claim. Mr. Kim sent another letter the following day, stating that Ms. de Lyon was not an officer of EE Mart and that she had no ownership interest in the company and no authority to act on its behalf. In February and March of 2010, Mr. Kim demanded that Travelers make further payments to cover EE Mart's rent and payroll expenses. Travelers, however, responded that EE Mart was not entitled to any further payments under its policy. Because of its financial loss, EE Mart was never able to reopen.

On November 21, 2011, Plaintiff filed suit against Travelers in the Circuit Court for Carroll County, alleging breach of contract and aiding and abetting breach of fiduciary duty and fraud. Travelers, a Connecticut corporation, removed the action to this Court on the basis of diversity. Plaintiff then filed an amended complaint, adding Ms. de Lyon, Expo Emart, LLC, Expo Emart I, LLC, Expo Emart III, LLC, and SDES, LLC ( all residents of Virginia) as defendants and adding claims of conversion, civil conspiracy, and civil RICO. Defendants now move to dismiss the amended complaint for failure to state a claim, lack of subject-matter jurisdiction, and lack of personal jurisdiction. In the alternative, they seek a transfer of venue to the Eastern District of Virginia.

## II.   LEGAL STANDARD

### A.   Failure to State a Claim: FED. R. CIV. P. 12(b)(6)

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atlantic v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 129 S.Ct. at 1950.

## III.   ANALYSIS

This case was originally removed to this Court on the basis of diversity jurisdiction, but that jurisdiction no longer exists because the Amended Complaint (ECF No. 14) added several non-diverse defendants.  The Amended Complaint, however, also added a civil RICO claim, which is based on federal law.  The Court's subject-matter jurisdiction over this case, therefore, now rests on the existence of a federal claim.  If that claim cannot survive Defendants' motion to dismiss, then it will be within the Court's discretion to either remand the remaining claims or retain them by exercising supplemental jurisdiction.  *See* 28 U.S.C. § 1376; *Wallace v. Mercantile County Bank*, 514 F.Supp.2d 776, 786 (D. Md. 2007).  Therefore, the Court will consider the legal sufficiency of Plaintiff's civil RICO claim before addressing any of the other issues raised in the instant motion.  As explained below, the Court finds that the claim is deficient and must be dismissed.

All civil RICO claims, regardless of the particular statutory violation alleged, must include an allegation of a "pattern of racketeering activity" consisting of at least two related predicate acts that "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).  Acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240 (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, n.14 (1985)).  With respect to the continuity element, the Fourth Circuit has explained:

> Continuity ... refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." [ *H.J. Inc.*, 492 U.S. at 242] (emphasis added). To satisfy the continuity element, a plaintiff must show that "the predicates themselves amount to, or ... otherwise constitute a threat of, continuing racketeering activity." *Id.* at [240] (emphasis in original). Significantly, "[p]redicate acts extending over a few weeks or months

and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with longterm criminal conduct." *Id.* at [242]....

Thus, predicate acts must be part of a prolonged criminal endeavor.

*Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). Furthermore, the pattern must

also constitute "ongoing unlawful activities whose scope and persistence pose a special threat to

social well-being." *Id.* (citing *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th Cir.

1987)).

Plaintiff alleges that Ms. de Lyon committed predicate acts of mail fraud on ten different

occasions by directing Travelers to send checks to her that were payable to EE Mart. It is less

than obvious that Plaintiff has adequately pled mail fraud at all, but even assuming it has, the

allegations fall well short of the "pattern" of unlawful activity that RICO requires. In the case of

*Menasco v. Wasserman*, the Fourth Circuit found that the elements of a "pattern of racketeering

activity" were not present because:

> Defendants' actions were narrowly directed towards a single fraudulent goal. They involved a limited purpose: to defraud Menasco, Inc. and Lucky Two, Inc. with respect to their oil interests. They involved but one perpetrator: Wasserman. They involved but one set of victims: Menasco and Lucky Two. Finally, the transaction took place over approximately one year.

*Menasco*, 886 F.2d at 684. The scope of the fraud alleged in this case is nearly identical: Ms. de

Lyon's only alleged purpose was to defraud EE Mart of its insurance proceeds; and, although she

allegedly used various sham business entities that she controlled to carry out the alleged fraud,

Ms. de Lyon is otherwise the sole alleged perpetrator; EE Mart was the sole victim; and all of the

alleged fraudulent activity took place over the course of a year. As the Fourth Circuit wrote in

*Menasco*, "Clearly, these acts do not constitute ongoing unlawful activities whose scope and

persistence pose a special threat to social well-being." *Id.* (quoting *Zepkin*, 812 F.2d at 155)

(internal quotation marks omitted).

For these reasons, the Court finds that Plaintiff has failed to state a claim of civil RICO and that Count V of the Amended Complaint must therefore be dismissed.  Plaintiff's remaining claims arise entirely under state law and the Court finds no compelling reason to retain jurisdiction of them.  The Court will therefore remand the remainder of this case to the Circuit Court for Carroll County.  28 U.S.C. § 1376; *Wallace*, 514 F.Supp.2d at 786.

## IV.    CONCLUSION

Accordingly, an order shall enter GRANTING IN PART and DENYING WITHOUT PREJUDICE IN PART Defendants' Motion to Dismiss (ECF No. 27), DISMISSING Count V of the Amended Complaint (ECF No. 14), and REMANDING this case to the Circuit Court for Carroll County.

Dated this 17th day of April, 2012

BY THE COURT:

James K. Bredar
United States District Judge

8